**STATE of Minnesota, Respondent,**

v.

**Ross E. TORGERSON, Appellant.**

**No. C4–82–913.**

Supreme Court of Minnesota.

Jan. 28, 1983.

C. Paul Jones, Public Defender, and Mollie G. Raskind, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., and William Neiman, Asst. County Atty., Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is an appeal from judgment of conviction of aggravated robbery that raises only one issue, whether the trial court erred in computing the defendant's criminal history score for sentencing purposes. If the defendant had a criminal history score of one, as the trial court determined, then the trial court correctly sentenced defendant to 32 months in prison. If, on the other hand, defendant's true criminal history score was zero, then defendant's sentence duration should have been 24 months. Specifically, at issue is Minnesota Sentencing Guidelines and Commentary, II.B.4. (1982), which governs the use of a defendant's juvenile record in determining his criminal history score. Holding that defendant's true criminal score was zero, we reduce defendant's sentence to 24 months.

Defendant was arrested on January 18, 1982, shortly after he and an accomplice committed an aggravated robbery of a gas station. Defendant subsequently pleaded guilty to an amended complaint charging him with using a knife in committing the robbery, thereby subjecting himself to a 1 year and 1 day mandatory minimum term under Minn.Stat. § 609.11, subd. 4 (1982). Previously defendant had been arrested and charged with committing the offenses of burglary and aggravated criminal damage to property on July 29, 1981, but defendant was diverted into Operation De Novo. Therefore, defendant had not been convicted on either of those offenses and those offenses could not be considered in determining his criminal history score. Defendant also had been through juvenile court in 1978 for a large number of felonies and one misdemeanor offense committed the day he became 16. These offenses apparently all did not occur at the same time and place that day. Defendant appeared in juvenile court on April 10, 1978, and admitted to two burglaries, one theft, and three aggravated forgeries and was adjudicated delinquent. He was then sentenced to Camp Thistledew.

Minnesota Sentencing Guidelines and Commentary, II.B.4. (1982) provides:

The offender is assigned one point for every two juvenile adjudications for offenses that would have been felonies if committed by an adult, provided that:

a. The juvenile adjudications were pursuant to offenses occurring after the offender's sixteenth birthday;

b. The offender had not attained the age of twenty-one at the time the felony was committed for which he or she is being currently sentenced; and

c. No offender may receive more than one point for prior juvenile adjudications.

The parties agree that defendant committed the acts after he became 16 and that he had not attained the age of 21 at the time he committed the current offense. Looking behind the single adjudication of delinquency, the trial court concluded that defendant had committed multiple acts as a juvenile that would have been felonies if committed by an adult and that therefore the single adjudication of delinquency should count as two or more adjudications of delinquency. We hold otherwise.

The Comments to II.B.4. state in relevant part as follows:

II.B.401. Commission research showed that an offender's record of felony-type juvenile adjudications was an important factor in judicial sentencing decisions for young adult felons. The juvenile history item is included in the criminal history index to identify those young adult felons whose criminal careers were preceded by repeated felony-type offenses committed as a juvenile. The Commission held several public hearings devoted to the issue of using juvenile records in the criminal history index. Those hearings pointed out differences in legal procedures and safeguards between adult and juvenile courts, differing availability of juvenile records, and differing procedures among juvenile courts. As a result of these issues, the Commission decided to establish rigorous standards regulating the consideration of juvenile records in computing the criminal history score.

II.B.402. First, only juvenile adjudications that would have been felonies if committed by an adult will be considered in computing the criminal history score. Status offenses, dependency and neglect proceedings, and misdemeanor or gross misdemeanor-type adjudications will be excluded from consideration.

II.B.403. Second, the juvenile adjudications must result from offenses committed after the offender's sixteenth birthday. The Commission chose the date of the offense rather than the date of adjudication to eliminate variability in application based on differing juvenile court practices.

II.B.404. Third, juvenile adjudications will be considered in computing the criminal history score only for adult offenders who had not attained the age of 21 at the time the felony was committed for which they are now being sentenced. Again, the Commission chose to examine the age of the offender at the time of the offense rather than at time of sentencing to prevent disparities resulting from system processing variations.

II.B.405. Fourth, the Commission decided that, provided the above conditions are met, it would take two juvenile adjudications to equal one point on the criminal history score, and that no offender may receive more than one point on the basis of prior juvenile adjudications. Again, no partial points are allowed, so an offender with only one juvenile adjudication meeting the above criteria would receive no point on the criminal history score. The one point limit was deemed consistent with the purpose for including juvenile record in the criminal history—to distinguish the young adult felon with no juvenile record of felony-type behavior from the young adult offender who has a prior juvenile record of repeated felony-type behavior. The one point limit also was deemed advisable to limit the impact of adjudications obtained under a juvenile court procedure that does not afford the full procedural rights available in adult courts.

According to the Comments, a defendant should receive a criminal history point based on his juvenile record only if his juvenile record is one of "repeated felony-type behavior." The apparent intent is to allow use of a defendant's juvenile record in determining his criminal history score only if the defendant has twice been through the juvenile court system and twice been adjudicated delinquent on the basis of felony-type behavior. Defendant only went through the system once and apparently was not a repeat juvenile offender. Therefore, defendant's criminal history score should have been zero and he should have received a sentence of 24 months. Accordingly, we reduce defendant's sentence to 24 months.

Affirmed as modified.